Slip Op. No. 23-158

# UNITED STATES COURT OF INTERNATIONAL TRADE

SAHA THAI STEEL PIPE PUBLIC
COMPANY LTD.,

*Plaintiff,*

and

THAI PREMIUM PIPE CO. LTD.,

*Plaintiff-Intervenor,*

v.

UNITED STATES,

*Defendant,*

and

NUCOR TUBULAR PRODUCTS, INC.
and WHEATLAND TUBE CO.,

*Defendant-Intervenors.*

Before: Stephen Alexander Vaden,
Judge

Court No. 1:21-cv-00627

## OPINION

[Plaintiffs' Motion for Judgment on the Agency Record is granted in part and denied in part.]

Dated: November 13, 2023

*Daniel L. Porter,* Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, DC, for Plaintiff. With him on the brief were *James P. Durling, James C. Beaty,* and *Ana Amador.*

*Robert G. Gosselink,* Trade Pacific PLLC, of Washington, DC, for Plaintiff-Intervenor. With him on the brief was *Aqmar Rahman.*

*Elizabeth Anne Speck*, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Franklin E. White*, Assistant Director, Commercial Litigation Branch, and *JonZachary Forbes*, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

*Robert E. DeFrancesco, III*, Wiley Rein LLP, of Washington, DC, for Defendant-Intervenor Nucor Tubular Products Inc. With him on the brief were *Alan H. Price* and *Theodore P. Brackemyre*.

*Elizabeth J. Drake*, Schagrin Associates, of Washington, DC, for Defendant-Intervenor Wheatland Tube Company. With her on the brief were *Roger B. Schagrin*, *Christopher T. Cloutier* and *Saad Y. Chalchal*.

**Vaden, Judge:**  Saha Thai Steel Pipe Public Company Ltd. (Saha Thai or Plaintiff) filed this case under Section 516A of the Tariff Act of 1930, as amended. Saha Thai challenges the Final Determination issued by the U.S. Department of Commerce (Commerce) after the agency conducted an administrative review of its 1986 antidumping duty order on circular welded carbon steel pipes and tubes imported from Thailand. *See Circular Welded Carbon Steel Pipes and Tubes from Thailand:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020* (Final Determination), 86 Fed. Reg. 69,620 (Dec. 8, 2021).  It challenges (1) Commerce's decision to apply adverse inferences drawn from facts otherwise available to find that Saha Thai was affiliated with seven customers and (2) Commerce's inclusion of out-of-scope merchandise in its calculation of the final antidumping margin.  *See* Compl. ¶¶ 18–31, ECF No. 39; 19 U.S.C. § 1677e(b)(1)(A).  For the reasons set forth below, the Court **GRANTS IN**

**PART** and **DENIES IN PART** Plaintiff's Motion and **REMANDS** the Final

Determination to Commerce to act consistently with the Court's opinion.

## BACKGROUND

Saha Thai is a foreign producer and exporter of welded carbon steel pipes and

tubes.   Compl. ¶ 3, ECF No. 39.   The relevant antidumping order defines covered

pipes and steel tubes:

> [C]ertain circular welded carbon steel pipes and tubes
> (referred to in this notice as 'pipes and tubes'), also known
> as 'standard pipe' or 'structural tubing,' which includes
> pipe and tube with an outside diameter of 0.375 inch or
> more but not over 16 inches, of any wall thickness, as
> currently provided in items 610.3231, 610.3234, 610.3241,
> 610.3242, 610.3243, 610.3252, 610.3254, 610.3256,
> 610.3258, and 610.4925 of the *Tariff Schedules of the
> United States Annotated* (TSUSA).

*Antidumping Duty Order: Circular Welded Carbon Steel Pipes and Tubes from*

*Thailand*, 51 Fed. Reg. 8341 (Mar. 11, 1986).[1]

### I.     The Disputed Final Determination

Commerce issued the original antidumping order on circular welded carbon

steel pipes and tubes from Thailand (Order) in 1986.  *See Antidumping Duty Order;*

*Circular Welded Carbon Steel Pipes and Tubes from Thailand*, 51 Fed. Reg. 8,341

(Mar. 11, 1986).  The subject of that Order and the products at issue in this case are

standard pipes imported from Thailand to the United States.   The International

Trade Commission (ITC) explained the differences between standard pipe and line

---

[1] This definition, which appears in the text of the original 1986 Order, is cited to for the
"Scope" in Commerce's Notice of the Final Results of the Administrative Review.  *See* Final
Determination, 86 Fed. Reg. at 69,620.

pipe in its original investigation:

> Standard pipe is manufactured to American Society of Testing and Materials (ASTM) specifications and line pipe is manufactured to American Petroleum Institute (API) specifications. Line pipe is made of higher grade steel and may have a higher carbon and manganese content than is permissible for standard pipe. Line pipe also requires additional testing. Wall thicknesses for standard and line pipes, although similar in the smaller diameters, differ in the larger diameters. Moreover, standard pipe (whether imported or domestic) is generally used for low-pressure conveyance of water, steam, air, or natural gas in plumbing, air-conditioning, automatic sprinkler and similar systems. Line pipe is generally used for the transportation of gas, oil, or water in utility pipeline distribution systems.

*Certain Welded Carbon Steel Pipes and Tubes from Thailand and Venezuela*, Inv. Nos. 701-TA-242 and 731-TA-252 and 253 (Preliminary), USITC Pub. 1680 (Apr. 1985).

Commerce initiated the 2019-2020 administrative review of the Order in May 2020. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 26,931 (May 6, 2020). It selected Saha Thai and Blue Pipe Steel Center[2] (Blue Pipe) as mandatory respondents. *See Circular Welded Carbon Steel Pipes and Tubes from Thailand: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2019-2020* (Preliminary Results), 86 Fed. Reg. 30,405, 30,406 (June 8, 2021).

Seeking to collect information on potential affiliates, Commerce issued Section A of its Initial Antidumping Questionnaire to Saha Thai on October 13, 2020. Section

---

[2] Blue Pipe is not a party to this action.

A Questionnaire at A-1, J.A. at 3,307, ECF No. 56.  Commerce requested that Saha

Thai:

> Identify all suppliers, (sub)contractors, lenders, exporters, distributors, resellers, and other persons involved in the development, production, sale and/or distribution of the merchandise under review which Commerce may also consider affiliated with your company, in accordance with section 771(33) of the Act and sections 351.102(b) and 351.401(f) of the regulations.

*Id.* at A-6, J.A. at 3,312.  In Section B of its Questionnaire, Commerce further

requested that:

> If you had sales to an affiliated party that consumed all or some of the merchandise (i.e., used it in the production of merchandise that does not fall within the description provided in Appendix III), then report all of your sales to that affiliate, whether the merchandise was consumed or resold by the affiliate.

Section B Questionnaire Response at 5, J.A. at 8,197, ECF No. 56.

Saha Thai submitted its Section A Response to Commerce on November 10,

2020.  Section A Resp., J.A. at 82,816 ECF No. 57.  In its narrative response, Saha

Thai explained that it divided its answer into the following three categories:  "(1) sales

to unaffiliated customers, (2) sales to potentially affiliated entities for consumption,

and (3) sales to affiliated resellers."  *Id.* at 3, J.A. at 82,819.  The company then

attached a table listing several companies as affiliated and indicating whether those

companies resold the subject merchandise or bought it for consumption.  *Id.* at Ex. A-

1, J.A. at 82,854.  It also reported that 16.68% of Saha Thai was owned by the

Ratanasirivilai family, 24.32% of the company was owned by the Karuchit family,

and that each family had two members serving as corporate directors. *Id*. at Ex. A-3, A-5, J.A. at 82,857, 83,667–8.

Needing more information from Saha Thai about certain reported affiliates, Commerce issued its First Supplemental Questionnaire, requesting Saha Thai "provide a detailed history, from January 1, 2015, through the present, of your business relationships with Blue Pipe [and other companies]." First Suppl. Questionnaire at 1 (Feb. 3, 2021), J.A. at 90,946, ECF No. 58. Saha Thai complied with this request and submitted its response on February 24, 2021. First Suppl. Questionnaire Resp., J.A. at 92,359, ECF No. 58. The agency then issued a Second Supplemental Questionnaire requesting revisions to Saha Thai's previously submitted customer list, including a request to "add a column to identify whether the customer is an affiliate." Second Suppl. Questionnaire at 1 (Mar. 11, 2021), J.A. at 96,071, ECF No. 58. Commerce issued a Third Supplemental Questionnaire on April 13, 2021. Third Suppl. Questionnaire, J.A. at 96,233, ECF No. 58. There, the agency requested Plaintiff:

> Please submit a list of all stockholders and their equity positions, managers, directors, officers, and department heads for both Saha Thai . . . and Saha Thai's affiliates. Please state whether any stockholder, manager, director, officer, or department head is also a stockholder, manager, director, officer, or department head at any other company involved in the development, production, sale and/or distribution of the merchandise under review.
>
> Please provide a complete family tree for . . . Saha Thai . . . . Please identify any member of these families that has any role in any company involved in the development, production, sale and/or distribution of the merchandise under review. For each such family member, please specify

> their role in the company, the English and Thai name of the company, and state whether that company is an affiliated party.

*Id.* at 1, J.A. at 96,235 (paragraph break added for readability).

Saha Thai submitted its response to the Third Supplemental Questionnaire in two parts. Third Suppl. Questionnaire Resp. Part 1 (Third Resp. Part 1) (May 4, 2021), J.A. at 96,420, ECF No. 58; Third Suppl. Questionnaire Resp. Part 2 (Third Resp. Part 2) (May 6, 2023), J.A. at 96,459, ECF No. 58. In its response, the company affirmed that "none of the individuals in the family grouping that owns Saha Thai is involved in the production, development, sale or distribution of merchandise under review other than the reported affiliations in Saha Thai's Section A response to the Department." Third Resp. Part 2 at 2, J.A. at 96,467, ECF No. 58. Saha Thai also affirmed that "none of its or its affiliates' employees, stockholders, managers, directors, officers, or department heads currently is employed with any other company that develops, produces, sells and/or distributes the merchandise under review other than those affiliations already described in Saha Thai's Section A response." *Id.* at 2–3, J.A. at 96,467–68.

Defendant-Intervenor Wheatland Tube then filed several hundred pages of public documents as rebuttal information, pertaining to Thai companies potentially affiliated with Saha Thai. Wheatland Tube Rebuttal of Saha Thai (Rebuttal of Saha Thai) (June 1, 2021), J.A. at 97,105, ECF No. 58. That same day, Wheatland Tube also filed rebuttal information against fellow respondent Blue Pipe's supplemental questionnaire responses regarding its affiliations. Wheatland Tube Rebuttal of Blue

Pipe (Rebuttal of Blue Pipe) (June 1, 2021), J.A. at 97,685, ECF No. 58.  In its submission against Saha Thai, Wheatland Tube quoted Saha Thai's supplemental questionnaire response — in which the company stated that "none of its or its affiliates' employees, stockholders, managers, directors, officers, or department heads currently is employed with any other company that develops, produces, sells and/or distributes merchandise under review" — and explained that the information Wheatland Tube now proffered was intended to "rebut, clarify, or correct [those] statements[.]"  Rebuttal of Saha Thai at 1, J.A. at 97,109, ECF No. 58.  Wheatland Tube explained that its submission would "[shed] light on the owners and directors which impact[] Saha Thai's claims of affiliation[.]"  *Id.*  Wheatland Tube provided a series of fifteen exhibits outlining the corporate structure, board membership, and other publicly available information for specific companies that had not been identified as affiliates by Saha Thai in its questionnaire response.  *Id.* at 1–2, J.A. at 97,109–10.  In its case brief, Wheatland Tube explained that its June 1, 2021 submission revealed that "Saha Thai's three largest home market customers now appear to be affiliated with Saha Thai, and these three companies represent some 50 percent of home market sales yet account for 95 percent of the sales matched to export sales in Commerce's standard margin program."  Petitioner Case Brief at 2, J.A. at 99,011, ECF No. 58.  Wheatland Tube also explained that Exhibit 4 from its Rebuttal to Blue Pipe and Exhibits 8, 10, and 14 from its Rebuttal to Saha Thai illustrate that four companies listed as Saha Thai's home market customers — C.S. Steel Product Co. Ltd., Nawapon Kanka Sakon Co. Ltd., Tac-M Group Co. Ltd., and Metallic Section

Steel Co. Ltd. — "are affiliated through total or near total stock ownership and board membership of the Ratanasirivilai Family" and that another two companies — Paisan Steel Co. Ltd. and JHP International Co. Ltd. — "appear to be affiliated through stock ownership and board members of the Kruchit (Krujit) Family." *Id.* at 11–12, J.A. at 99,020–21; *see also* Rebuttal of Blue Pipe at Exs. 4-5, J.A. at 97,997–98,011, 98,013–42, ECF No. 58; Rebuttal of Saha Thai at Exs. 2, 8, 10, 14, J.A. at 97,116–134, 97,301–347, 97,404–477, 97,592–669, ECF No. 58. This revelation was significant because Saha Thai had reported in its questionnaire responses that those same two families owned significant portions Saha Thai, and each family had members serving on Saha Thai's board. Sect. A Resp. at Ex. A-3, A-5, J.A. at 82,857, 83,667–68, ECF No. 57.

Because Wheatland Tube submitted this rebuttal information only seven days before Commerce published its preliminary determination, the agency did not analyze Wheatland Tube's submission in its preliminary results. *See* Preliminary Results, 86 Fed. Reg. 30,405 (June 8, 2021). In that determination, Commerce assigned Saha Thai a dumping margin of 7.23% based in part on the application of a particular market situation adjustment to Saha Thai's costs. *Id.* at 30,406; Preliminary Decision Memorandum (PDM) at 8–11, J.A. at 13,684–67, ECF No. 56. Shortly after publication of the preliminary determination, Saha Thai submitted its own rebuttal information on June 21, 2021. Saha Thai's Rebuttal of Wheatland Tube (Saha Thai Rebuttal), J.A. at 98,778, ECF No. 58. Saha Thai argued that Wheatland Tube's "submission is wholly irrelevant for the purposes of this administrative review

because none of the entities identified by Petitioners produce, sell or distribute merchandise under review." *Id.* at 7, J.A. at 98,785.

Commerce addressed the new information submitted by Wheatland Tube and Saha Thai in its Final Determination and accompanying Issues and Decision Memorandum and Final Calculation Analysis. *See* Final Determination, 86 Fed. Reg. 69,620; IDM at 4–10, J.A. at 14,291–97, ECF No. 56; Final Calculation Analysis at 1–7, J.A. at 99,504–510, ECF No. 56. Commerce decided to draw adverse inferences from facts otherwise available because Saha Thai had "home-market customers [that] may, in fact, be affiliated with Saha Thai and . . . Saha Thai did not report them as affiliated customers, nor did it report certain family members that had a role with respect to those customers." IDM at 8–9, J.A. at 14,295–96, ECF No. 56. The agency found that there was a gap in the record justifying the use of facts otherwise available because, even with the documentation provided by Wheatland Tube, it lacked "complete details on the ties between Saha Thai and these customers to make affiliation determinations." *Id.* at 9, J.A. at 14,296. Commerce "determine[d] that, by withholding this information [concerning potential affiliates], Saha Thai . . . has not acted to the best of its ability[.]" *Id.* It found that Saha Thai had failed to identify the home-market customers flagged by Wheatland Tube as affiliates. *Id.* Commerce also drew an adverse inference to find that all the customers in question were involved in sales or production of subject merchandise because "the record does not establish that any of the home-market customers in question unquestionably did or did not re-sell some or all their purchases from Saha Thai." *Id.* at 10, J.A. at 14,297.

Thus, Commerce drew the adverse inference that "the customers in question are all affiliated with Saha Thai." *Id.* at 9, J.A. at 14,296. It continued to apply a particular market situation adjustment to Saha Thai's costs of production. *Id.* at 23–28, J.A. at 14,310–15. Together, these determinations led Commerce to assign Saha Thai an updated antidumping margin of 36.97%. Final Determination, 86 Fed. Reg. at 69,621.

The Final Calculation Analysis provided further details about the agency's reasoning. Final Calculation Analysis at 1–7, J.A. at 99,504–510, ECF No. 58. Commerce, drawing on Wheatland Tube's submission of publicly available information, explained:

> The record shows that following [*sic*] Saha Thai home market customers are affiliated through majority stock ownership and board membership of the Ratanasirivilai family: C.S. Steel Product Co. Ltd., Nawapon Kanka Sakon Co., Ltd., Tac-M Group Co., Ltd., and Metallic Section Steel Company Limited. The record further indicates that members of the Khruchit . . . family are shreholders of JHP International Co., Ltd. With respect to Paisan Steel Co., Ltd., one of the directors is "Somchai Karuchit" who is also one of the directors of Saha Thai. Thus, the record suggests that Saha Thai is affiliated with the home market customers identified above.[3]

*Id.* at 2, J.A. at 99,505.

In addition to the six companies for which Wheatland Tube provided extensive ownership documentation to support its allegation of affiliation, the agency also found an affiliation between Saha Thai and a seventh customer, BNK Steel Co. Ltd. (BNK),

---

[3] At oral argument, the parties agreed that this information, which was marked confidential in the Final Calculation Analysis, is not confidential because it is publicly available information. Oral Arg. Tr. at 22:5–15, ECF No. 80.

based on a single shared human resources manager. *Id.* Commerce acknowledged Saha Thai's response that this single shared employee did not "[amount] to a traditional leadership position" and that "Wheatland Tube . . . has not proven that it entails a legal or operational position allowing for the exercise of control." *Id.* However, Commerce concluded that Saha Thai should have identified BNK when it was asked "to 'state whether Saha Thai's or any of Saha Thai's affiliates' employees, stockholders, managers, directors, officers, or department heads has an equity or a debt position in any other company involved in the development, production, sale, and/or distribution of the merchandise under review.'" *Id.* This omission left Commerce to rely only on Wheatland Tube's submission which, Commerce observed, "was limited to public records in its research[.]" *Id.* On that basis, Commerce concluded that "we cannot assume that there are no other ties between Saha Thai and BNK which Saha Thai failed to disclose[, and as] a result we cannot determine that Saha Thai is necessarily not affiliated with BNK." *Id.*

## II.    The Present Dispute

Saha Thai filed a Complaint challenging Commerce's Final Determination on December 20, 2021. ECF No. 6. On April 8, 2022, Saha Thai amended its complaint to incorporate Commerce's remand redetermination pursuant to this Court's opinion in *Saha Thai I*, which "confirmed that dual-certified pipe is not within the scope of the order under review in the administrative proceeding at issue here." Pl.'s First Am. Compl. ¶¶ 26-31, ECF No. 39; *see also Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 547 F. Supp. 3d 1278 (CIT 2021) (*Saha Thai I*). Of Plaintiff's claims,

the following remain at issue: (1) whether Commerce's application of adverse inferences to find that Saha Thai is affiliated with certain customers is unsupported by substantial evidence; (2) whether the agency's decision to permit Wheatland Tube to file new factual information rebutting Saha Thai's questionnaire responses was an abuse of discretion; and (3) whether the antidumping margin calculation includes products outside the scope of the antidumping order.[4] Pl.'s Br. at 22–54, ECF No. 40.

In its response brief, the Government argued that its decision to draw adverse inferences from facts otherwise available was lawful because (1) Saha Thai impeded the investigation; (2) the agency gave adequate notice to Saha Thai through its issuance of supplemental questionnaires; and (3) it properly accepted Wheatland Tube's submission of new factual information. Def.'s Resp. at 10–31, ECF No. 47. Wheatland Tube filed a response brief largely echoing Commerce's arguments. Def.-Int Wheatland Tube's Resp. at 4–22, ECF No. 50. Defendant-Intervenor Nucor Tubular also submitted a brief fully adopting the positions of Wheatland Tube. Def.-Int. Nucor Tubular's Resp. at 1, ECF No. 49. Saha Thai replied that (1) it had fully cooperated with all of Commerce's requests for information; (2) there was no gap in the record regarding affiliated companies and therefore no justification for Commerce's reliance on facts otherwise available; (3) Commerce never notified it of any deficiencies in its responses as the governing statute requires; and (4) the antidumping rate must be revised because it contains out-of-scope merchandise. Pl.'s Reply at 11–32, ECF No. 53.

---

[4] Plaintiff-Intervenor Thai Premium Pipe Company fully adopted Saha Thai's positions. *See* Pl.-Int. Reply Br. at 1, ECF No. 55.

The parties were able to solve one count of the Complaint before argument. Saha Thai cited the Federal Circuit's decision in *Hyundai Steel Co. v. United States*, 19 F.4th 1346 (Fed. Cir. 2021) — which confirmed that Commerce lacked the authority to make particular market situation adjustments under 19 U.S.C. § 1677b(b) — and argued that Commerce's adjustment here similarly was illegal. Pl.'s Br. at 10–12, ECF No. 40. Commerce replied to this argument by requesting a remand to remove the particular market situation adjustment. Def.'s Resp. at 41, ECF No. 47. Wheatland Tube also agreed to a voluntary remand. Def.-Int Wheatland Tube's Resp. at 21–22, ECF No. 50.

The Court granted Commerce's request for a voluntary remand so that it could remove the particular market situation adjustment. ECF No. 60. In *Hyundai Steel*, the Federal Circuit affirmed the consistent position of the Court of International Trade and held that applying a particular market situation adjustment to the calculation of the cost of production under 19 U.S.C. § 1677b(b) for sales below cost is illegal. *Hyundai Steel*, 19 F.4th at 1352. Commerce filed its Remand Redetermination on November 29, 2022, removing the particular market situation adjustment. ECF No. 61. No party contests its removal. *See, e.g.,* Pl.'s Remand Comments at 3, ECF No. 63 ("Saha Thai agrees that the change in weighted-average dumping margin correctly reflects removal of the PMS cost adjustment.").

Plaintiff's scope claim — by contrast — became messier. Commerce asserted that administrative exhaustion bars Saha Thai's argument. Def.'s Resp. at 41–43, ECF No. 47. Saha Thai responded that administrative exhaustion did not bar its

argument because it was only *after* the filing of its initial case brief here that "Commerce issued its remand redetermination in the scope proceeding in which Commerce changed its scope determination, concluding that dual-certified line pipe was <u>not</u> covered by this AD order." Pl.'s Reply at 28, ECF No. 53. Saha Thai noted that it was not until August 25, 2022, that "this Court rendered its final judgment affirming Commerce's remand redetermination" regarding the scope of the Order. *Id.*; *see also Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 592 F. Supp. 3d 1299 (CIT 2022) (*Saha Thai II*). Plaintiff asserts that "Commerce is under an affirmative obligation to correct the Final Results" of the disputed review to reflect the scope determination. Pl.'s Reply at 28, ECF No. 53. Saha Thai alleges that two exceptions to administrative exhaustion — futility and pure question of law — should apply to excuse its failure to raise the issue before the agency. *Id.* at 29.

The Court ordered Commerce to respond to Saha Thai's argument that it met one of the exceptions to administrative exhaustion. ECF No. 67; *see also* Pl.'s Reply at 29, ECF No. 53. In its sur-reply brief, Commerce argued that, because Saha Thai never challenged the appropriateness of the inclusion of dual-stenciled pipe before the agency, the futility exception to administrative exhaustion does not apply. Def.'s Sur-Reply at 4, ECF No. 68. Commerce also noted that the appeal of this Court's determination that dual-stenciled pipe is not within the Order's scope remains pending before the Federal Circuit and requested that "[t]o the extent that the Court determines Saha Thai's arguments raise a pure question of law . . . this Court should wait until after the issuance of the final mandate by the Federal Circuit before ruling

on this issue." *Id.* at 5–6; *see also Saha Thai Steel Pipe Public Co. Ltd. v. United States*, No. 22-2181 (Fed. Cir.) (argued Nov. 7, 2023). The Government did not, however, articulate any substantive response to Plaintiff's argument that the pure question of law exception should apply. In Wheatland Tube's sur-reply, it contended that the pure question of law exception to administrative exhaustion does not apply because scope rulings are highly factual inquiries. Def.-Int.'s Sur-Reply at 4, ECF No. 70.

With the supplemental briefing complete, the Court held oral argument on July 13, 2023. ECF No. 78. There, the parties clarified their positions on whether administrative exhaustion prohibits Plaintiff's arguments regarding the scope of Commerce's review or whether an exception to that doctrine applies. Plaintiff reaffirmed its position that, despite its failure to preserve the issue before the agency, the matter falls under the pure question of law exception and should therefore not be barred. Oral Arg. Tr. at 12:18-20, ECF No. 80. Counsel argued that 19 U.S.C. § 1675, which provides the statutory framework for Commerce's calculation of antidumping margins, empowers the agency to calculate those margins only on "covered merchandise." Thus, where the agency includes non-covered merchandise in its calculation, it has exceeded its statutory authority and must be reversed as a matter of law. *Id.* at 13:5-17. Meanwhile, the Government conceded it had failed to address this argument in its sur-reply. When asked to state its position, the Government explained that it could "see it from both sides" but ultimately agreed with Plaintiff and "thought it could be a question of law." *Id.* at 18:5–18. Because the Government

wishes any remand redetermination to reflect the forthcoming decision of the Federal Circuit on the scope issue, it requested that the Court structure any remand to allow it to align the agency's position with that of the Federal Circuit. *Id.* at 72:11–17.

The parties also discussed the omission of seven companies as potential affiliates in Plaintiff's questionnaire responses and whether those omissions constituted noncooperation by Saha Thai. Regarding the six companies for which Wheatland Tube provided extensive documentation, counsel for Saha Thai conceded that their omission was error. *Id.* at 29:4–5 ("Straight up, that was likely a mistake."). Plaintiff's counsel also stated that it would not make a difference for Saha Thai whether Commerce's finding of affiliation regarding those six companies was affirmed. Nonetheless, Plaintiff declined to withdraw its challenge on that issue. *Id.* at 25:13–14 ("The punch line is as follows. Your decision on the six companies has no bearing on the result."); 27:3–25; 74:1–2 ("honestly whatever they do with six, don't really care"). With this scrambled set of party positions as the background, the Court applies the law.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over Plaintiffs' challenge to the administrative review under 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting final determinations in antidumping orders. The Court must sustain Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(i). If they are

unsupported by substantial evidence or not in accordance with the law, the Court must "hold unlawful any determination, finding, or conclusion found." *Id.* "[T]he question is not whether the Court would have reached the same decision on the same record[;] rather, it is whether the administrative record as a whole permits Commerce's conclusion." *See New American Keg v. United States*, No. 20-00008, 2021 WL 1206153, at *6 (CIT Mar. 23, 2021).

Reviewing agency determinations, findings, or conclusions for substantial evidence, the Court assesses whether the agency action is reasonable given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). The Federal Circuit has described "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## DISCUSSION

### I.      Summary

The present case raises three issues: (1) whether administrative exhaustion bars the argument that dual-stenciled pipe was improperly included in the calculation of Saha Thai's antidumping margin; (2) whether Commerce complied with the statutory prerequisites for drawing adverse inferences from facts otherwise available with respect to six of Saha Thai's customers; and (3) whether substantial

evidence supports the agency's finding that BNK is affiliated with Saha Thai. *See* Pl.'s Reply at 11–33, ECF No. 53. The first issue is easily disposed of because the Government took the position that it would need to reconsider the question of whether to include dual stenciled pipe in light of intervening judicial decisions. Oral Arg. Tr. at 18:12–23, ECF No. 80; *see Saha Thai I*, 547 F. Supp. 3d at 1281 (holding that dual-stenciled pipe was not within the scope of the Order). The Court therefore interprets Commerce's request as one for a voluntary remand regarding the question of exhaustion and **GRANTS** that request.

The second issue is similarly straightforward. Saha Thai never named the six companies as potential affiliates even though it had notice that Commerce was requesting information about companies that *may* have been affiliated. *See* Section A Resp. at 3. J.A. at 82,819, ECF No. 57. At oral argument, counsel for Saha Thai conceded that the omission of the six companies was in error. Oral Arg. Tr. at 29:4–5, ECF No. 80 (In response to the Court's observation that Commerce was never told about the six companies, Plaintiff's counsel stated, "Straight up, that was likely a mistake."). This omission left a gap in the record that rendered Commerce unable to complete its affiliation analysis, warranting the use of facts otherwise available with an adverse inference. *See* 19 U.S.C. § 1677e(a)(1)–(2). Substantial evidence therefore supports Commerce's findings regarding the six potentially affiliated companies such that the Court will **SUSTAIN** Commerce's related determinations.

The same cannot be said for Commerce's decision to apply adverse inferences to find that the seventh omitted company — BNK — was also affiliated with Saha

Thai.  Commerce drew that adverse inference based on a single human resources manager that was shared between BNK and Saha Thai.  *See* Final Calculation Analysis at 2, J.A. at 99,505, ECF No. 58.  Instead of explaining how a single shared employee whose position is not obviously involved in overseeing the manufacture of subject merchandise could be evidence of affiliation, Commerce merely speculated that there *could* be *other* links between the two companies.  *Id.*  Bare speculation is not substantial evidence.  The Court must **REMAND** Commerce's determination of affiliation for further analysis and explanation in conformance with this opinion.

## II.    Remand Because of Intervening Legal Decision

Plaintiff first asks the Court to remand Commerce's decision with instructions to remove dual-stenciled pipe from the scope of the administrative review.  In *Saha Thai I*, this Court held that the scope governing this administrative review did not bring dual-stenciled pipe within its ambit.  547 F. Supp. 3d at 1281.  Saha Thai notes that, at the time of the administrative proceedings in this case, "the law was that the dual-certified pipe was within the scope of the order."  Pl.'s Reply at 28, ECF No. 53.  Because of the Court's subsequent ruling in *Saha Thai I*, Plaintiff argues that the pure question of law exception to administrative exhaustion applies to excuse its failure to raise the issue of the scope's proper coverage during the administrative review.  Pl.'s Reply at 29–31, ECF No. 53.  Commerce failed to offer a substantive response to this argument in its brief and, instead, merely noted that the question is still on appeal at the Federal Circuit.  Def.'s Sur-Reply at 5, ECF No. 68 (noting that the "relevant scope issue is still on appeal in the Federal Circuit in *Saha Thai Steel*

*Pipe Public Co. Ltd. v. United States*, No. 22-2181 (Fed. Cir.)"). Conversely, Wheatland Tube was unequivocal that the pure question of law exception does not apply because the construction of the scope of the Order is not a purely legal question. Def.-Int.'s Sur-Reply at 4, ECF No. 70; *see also* Oral Arg. Tr. at 19:3–8, ECF No. 80 ("It's our position that . . . Commerce would have to engage in a fact-specific inquiry and in fact, make new calculations, and that would go beyond what the pure question of law doctrine would allow.").

The Court sought to clarify the Government's position at oral argument. After much throat-clearing, Commerce stated that the agency would need to reconsider the scope's coverage if this Court's ruling is affirmed on appeal. Oral Arg. Tr. at 17:12–14, ECF No. 80 ("[I]f the Court says it's in scope, then Commerce will have to reach a decision telling us you'll have to correct it . . . ."). Government counsel then confirmed that Commerce believes the pure question of law exception applies. *Id.* at 18:21–23 (responding "yes, Your Honor" when asked by the Court whether the Government "agree[d] that it is a question of law").

Under Federal Circuit precedent, an agency may request a remand "because of intervening events outside of the agency's control, for example, a new legal decision or the passage of new legislation." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001). "A remand is generally required if the intervening event may affect the validity of the agency action." *Id.* The Court is "free, within reasonable limits, to set the parameters of the remand." *Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube AB*, 975 F.2d 807, 814 (Fed. Cir. 1992).

The present circumstances justify a remand. Plaintiff has pointed to this Court's intervening legal decision; and Commerce has taken the position that, if the Federal Circuit affirms that decision, Commerce should align its scope determination here with the Court's decision. Oral Arg. Tr. at 72:12–17, ECF No. 80. Given the Government's concessions at oral argument, this Court **GRANTS** a voluntary remand to the agency so that it may reconsider whether Saha Thai's dual-stenciled pipe sales were properly included in the administrative review. The Remand Redetermination will not be due until after the mandate issues in the pending Federal Circuit appeal to promote administrative and judicial economy.

### III.    Six of the Seven Potential Affiliates

Commerce found that Saha Thai failed to disclose seven companies as potential affiliates despite multiple questionnaires seeking that information. *See* Final Calculation Analysis at 2, J.A. at 99,505, ECF No. 58; Def.'s Resp. at 13–19, ECF No. 47. Wheatland Tube found publicly available data that shed light on the seven potential affiliates and filed that information with Commerce. Rebuttal of Saha Thai, J.A. at 97,105, ECF No. 58. Commerce used that publicly available information to draw adverse inferences against Saha Thai and find that all seven companies were affiliated with Plaintiff. Final Calculation Analysis at 2, J.A. at 99,505, ECF No. 58. Saha Thai counters that Commerce never asked for information about *potential* affiliates so that no necessary information was missing from the record. Pl.'s Reply at 12, ECF No. 53. However, at oral argument, Saha Thai's counsel admitted that it was an error not to include six of the seven companies in its response to Commerce's

Initial Questionnaire.  Oral Arg. Tr. at 29:4–7, ECF No. 80 ("Straight up, that was likely a mistake . . . . They should have been [reported] in category 2.").

Commerce must determine whether a given customer is affiliated with a respondent because "an overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible[.]" *Parkdale Int'l v. United States*, 475 F.3d 1375, 1380 (Fed. Cir. 2007).  To calculate the antidumping margin, the agency must compare the U.S. price and the normal value of the subject merchandise.  19 U.S.C. § 1675(a)(2)(A).  Normal value is the sale price of the foreign like product sold "for consumption in the exporting country, in the usual commercial quantities and in the ordinary course of trade."  19 U.S.C. § 1677b(a)(1)(B)(i).  In other words, Commerce must determine if the company under investigation sells the same product in its home country for more than its selling price in the United States.  Sales to affiliated companies raise the question of whether the transactions reflect true market price.  Commerce may only consider a company's sales to affiliates if Commerce is "satisfied that the price is comparable to the price at which the exporter or producer sold the foreign like product to a person who is not affiliated with the seller."  19 C.F.R. § 351.403(c).  When examining sales to affiliated parties, Commerce applies an arm's length test to determine whether the transactions were truly made in the ordinary course of trade.  *See Timken Co. v. United States*, 26 CIT 1072, 1079-80 (2002) (describing the arm's length test).  When transactions with affiliated customers are found to be not at arm's length, Commerce excludes them from the calculation of normal value; and those transactions play no

role in the calculation of the final antidumping margin. *Id.* It is therefore vital that parties identify to Commerce all potentially affiliated companies so that Commerce will only use arm's length transactions when calculating normal value.

The test for whether a company is considered "affiliated" is defined by statute. 19 U.S.C. § 1677(33) defines "affiliated persons" as:

> "Members of a family . . . any officer or director of an organization and such organization[,] partners[,] employer and employee[,] any person directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization[,] two or more persons directly or indirectly controlling, or controlled by, or under common control with, any person[, and] any person who controls any other person and such other person."

The same statute also explains that "a person shall be considered to control another person if the person is legally or operationally in a position to exercise restraint or direction over the other person." *Id.* The accompanying regulation expounds on this definition, explaining that "in determining whether control over another person exists . . . [the agency] will not find that control exists . . . unless the relationship has the potential to impact decisions concerning the production, pricing, or cost of the subject merchandise or foreign like product." 19 C.F.R. § 351.102(b)(3). When carrying out its mandate to calculate the subject company's dumping margin, it is this definition that Commerce must apply to determine whether customers are affiliated. Commerce collects information from respondents to calculate antidumping margins through voluntary responses to questionnaires, which reflect the statutory definition of affiliation.

When Commerce is missing data necessary to calculate the normal value of merchandise subject to an antidumping investigation — whether it be related to affiliation or any other information necessary for the agency's analysis — the statutes provide a two-part process to fill the gap. *See* 19 U.S.C. § 1677e(a). The statute enables Commerce to use "facts otherwise available" in place of the missing information if:

(1) Necessary information is not available on the record, or

(2) An interested party or any other person —

    (A) Withholds information that has been requested by [Commerce],

    (B) Fails to provide such information by the deadlines for submission of the information or in the form and manner requested, . . .

    (C) Significantly impedes a proceeding under this subtitle, or

    (D) Provides such information but the information cannot be verified[.]

Separately, 19 U.S.C. § 1677e(b) permits those facts otherwise available to be chosen with an adverse inference if "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from [Commerce]." Although § 1677e(a) and § 1677e(b) are often collapsed into "adverse facts available" or "AFA," the two statutory processes require distinct analyses rather than the single analysis implied by the term "AFA." Commerce first must determine that it is missing necessary information; and, if it wishes to fill the resulting gap with facts that reflect an adverse inference against an interested party, Commerce must secondarily determine that the party has failed to cooperate by not acting to the best

of its ability. *See Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1346 (Fed. Cir. 2011).

Before using facts available, however, Commerce must give the respondent an opportunity to rectify the deficiency. *See* 19 U.S.C. § 1677m(d). The agency shall "promptly inform the person submitting the response of the nature of the deficiency" and "provide that person with an opportunity to remedy or explain the deficiency." *Id.* If those further responses are also unsatisfactory or untimely, Commerce may disregard the information respondents have provided and "use the facts otherwise available in reaching the applicable determination." 19 U.S.C. §§ 1677m(d), 1677e(a); *see also Diamond Sawblades Mfrs.' Coal. v. United States*, 986 F.3d 1351, 1362–64 (Fed. Cir. 2021) (analyzing the statutory framework).

Commerce's Section A Questionnaire requested that Saha Thai "[i]dentify all suppliers, (sub)contractors, lenders, exporters, distributors, resellers, and other persons involved in the development, production, sale and/or distribution of the merchandise under review which *Commerce may also consider affiliated* with your company[.]" Section A Questionnaire at A-6, J.A. at 3,312, ECF No. 56 (emphasis added). Saha Thai did not identify any of the six companies now at issue in its answer to that question. *See* Section A Resp. at Ex. A-1, J.A. at 82,854 ECF No. 57. Nor did Saha Thai identify those companies in response to Commerce's Third Supplemental Questionnaire, which asked "whether any stockholder, manager, director, officer, or department head is also a stockholder, manager, director, officer, or department head at any other company involved in the development, production, sale and/or

distribution of the merchandise under review." Third Suppl. Questionnaire at 1, J.A. at 96,235, ECF No. 58. Instead, Saha Thai asserted that, "Other than the affiliations reported in Saha Thai's Section A response, no other stockholders, managers, directors, officers, or department heads at Saha Thai are related to any other company that produces, develops, distributes or sells [the subject merchandise]." *Id.*; Third Resp. Part 2 at 1, J.A. at 96,466, ECF No. 58. Wheatland Tube's submission of public data demonstrated Saha Thai's response was less than forthcoming. IDM at 9, J.A. at 14,296, ECF No. 56. Namely, the public records showed that four of Saha Thai's home market customers — C.S. Steel Product Co. Ltd., Nawapon Kanka Sakon Co. Ltd., Tac-M Group Co. Ltd., and Metallic Section Steel Company Ltd. — "are affiliated through majority stock ownership and board membership of the Ratanasirivilai family"; that "members of the Khruchit . . . family are shareholders" of another of Saha Thai's home market customers, JHP International Co., Ltd.; and that, for a sixth home market customer, Paisan Steel Co. Ltd, "one of the directors . . . is also one of the directors at Saha Thai." Final Analysis Memo at 2, J.A. at 99,505, ECF No. 58. All of this offers strong support of affiliation in light of Saha Thai's own admission "that members of the Ratanasirivilai family own 16.68% of Saha Thai and members of the Karuchit family own 24.32% of Saha Thai" and that "of Saha Thai's six directors, two are members of the Ratanasirivilai family and two are members of the Karuchit family." *Id.*; *see also* 19 U.S.C. § 1677(33) (listing persons who "shall be considered 'affiliated'" including "members of a family" and "any person directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the

outstanding voting stock or shares of any organization and such organization"). However, the publicly available information was insufficient for Commerce to do a full affiliation analysis because the agency still lacked the "complete details on the ties between Saha Thai and these customers to make affiliation determinations." IDM at 9, J.A. at 14,296, ECF No. 56. In other words, although the publicly available documents provided by Wheatland Tube regarding the shared ownership and executive ties between Saha Thai and other companies served as strong evidence of affiliation, it could not entirely fill the gap left by Saha Thai's omissions. The failure to provide this information therefore inhibited Commerce in fulfilling its statutory mandate to analyze the affiliation status of each of the six companies. *See* 19 U.S.C. § 1677(33) ("The following persons *shall* be considered to be 'affiliated' . . . .") (emphasis added).

Saha Thai first raises a procedural defense against use of Wheatland Tube's submission. *See* Pl.'s Mot. at 23–28, ECF No. 40. Plaintiff argues that Wheatland Tube violated the requirement that submitters of rebuttal information provide a written summary of that information. *Id.* at 24 (citing 19 C.F.R. § 351.301(b)(2)). However, that regulation does not require the submission of a complete narrative summarizing all the submitted documents. Instead, it requires the submitter to "provide a written explanation identifying the information which is already on the record that the factual information seeks to rebut, clarify, or correct." 19 C.F.R. § 351.301(b)(2). Wheatland Tube stated on the first page of its submission that it was providing information to rebut specific statements and exhibits in Saha Thai's Third

Supplemental Questionnaire Response. In fact, Wheatland Tube went as far as to quote the responses from Saha Thai's questionnaire response that it sought to rebut. *See* Rebuttal of Saha Thai at 1, J.A. at 97,109, ECF No. 58 ("On pages 2–3 of its supplemental questionnaire response dated May 6, 2021, respondent Saha Thai . . . informed Commerce that "none of its or its affiliates' employees, stockholders, managers, directors, officers, or department heads currently is employed with any other company that develops, produces, sells and/or distributes merchandise under review" except as described in the company's Section A response."). Wheatland Tube's submission then proceeded to do just that by providing a series of documents outlining the ownership and executive ties between Saha Thai and companies it failed to identify as potential affiliates in its responses. *Id.* at 1–2, J.A. at 97,109–10. Wheatland Tube's summary put Saha Thai on sufficient notice of which of its claims was challenged. Wheatland Tube therefore complied with the regulation.[5]

Saha Thai next objects that Commerce did not give it notice of its deficient affiliation responses or an opportunity to remedy those deficiencies as required by statute. Pl.'s Reply at 21–24, ECF No. 53. The burden to provide timely notice before the agency publishes its final determination lies with Commerce. *See* 19 U.S.C. § 1677m(d). Commerce may refuse to provide notice when it can demonstrate bad faith on the respondent's part but not when it merely alleges that some information

---

[5] Saha Thai also argues that Wheatland Tube violated Commerce's regulations by failing to provide translations of its documents. Pl.'s Mot. at 26, ECF No. 40. Saha Thai fails to point to any prejudice resulting from the lack of translated versions. Hence, this violation was harmless error. *See PAM S.p.A. v. United States*, 463 F.3d 1345, 1348 (Fed. Cir. 2006) (requiring a showing of substantial prejudice when Commerce violated its own regulation that required it to give notice to a foreign exporter).

it wanted was not provided. *See Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*, 605 F. Supp. 3d. 1348, 1366 (CIT 2022) (citing *Papierfabrik Aug. Koehler SE v. United States*, 843 F.3d 1373, 1384 (Fed. Cir. 2016)). The statute does not "compel[] Commerce to treat intentionally incomplete data as a 'deficiency' and then to give a party that has intentionally submitted incomplete data an opportunity to 'remedy' as well as to 'explain.'" *Papierfabrik*, 843 F.3d at 1384; *see also ABB Inc. v. United States*, 355 F. Supp. 3d 1206, 1222 (CIT 2018) ("When a respondent provides seemingly complete, albeit completely inaccurate, information, § 1677m(d) does not require Commerce to issue a supplemental questionnaire seeking assurances that the initial response was complete and accurate.").

Commerce complied with § 1677m(d) by virtue of its series of questionnaires in which the agency repeatedly asked for information about Saha Thai's potential affiliates. Saha Thai's own answers demonstrate that it understood the questions to include not only companies that, in Saha Thai's view, clearly were affiliates but also companies for which the question of affiliation might be disputed. Commerce's Section A Questionnaire requested that Saha Thai identify all customers that "Commerce may consider" affiliated with Saha Thai. Section A Questionnaire at A-6, J.A. at 3,312, ECF No. 56. Plaintiff's narrative response explained that it was reporting "sales to *potentially affiliated* entities for consumption," yet Saha Thai did not include any of the six companies in its response. Section A Resp. at 3, J.A. at 82,819, ECF No. 57 (emphasis added). Saha Thai answers that it did not have to report the six companies because Commerce never asked Saha Thai to report

potential affiliates that were not involved in the sale, development, or production of the subject merchandise. Pl.'s Reply at 13–14, ECF No. 53. Once again, the plain text of Commerce's questions belies Saha Thai's claim. Commerce's Section B Questionnaire asked Saha Thai to "report all of your sales to that affiliate, *whether the merchandise was consumed or resold by the affiliate.*" Section B Questionnaire Response at 5, J.A. at 8,197, ECF No. 56 (emphasis added). Thus, Commerce did not limit its query to companies that sold, developed, or produced pipe but also included those companies that may have only consumed or resold it. *See* Section A Resp. at Ex. A-1, J.A. at 82,854 ECF No. 57.

Commerce gave Saha Thai yet another opportunity to remedy the deficiencies in its initial response when it issued the Third Supplemental Questionnaire. There, Commerce asked Saha Thai to list any companies that had overlapping directors, significant stockholders, and board members with Saha Thai. Third Supp. Quest. at 1, J.A. at 96,235, ECF No. 58 ("Please submit a list of all stockholders, managers, directors, officers, and department heads" and state whether any of those individuals "is also a stockholder, manager, director, officer, or department head at any other company involved in the development, production, sale, and or distribution" of the covered merchandise.). Plaintiff again declined to disclose any information about the six companies in question and stated that "none of the individuals in the family grouping that owns Saha Thai is involved in the production, development, sale or distribution of merchandise under review other than the reported affiliations in Saha Thai's Section A response to the Department." Third Response Part 2 at 2, J.A. at

96,467, ECF No. 58. Saha Thai's counsel removed any doubt about the clarity of Commerce's requests when he admitted that it was an error not to report the six companies as potential affiliates. Oral Arg. Tr. at 29:4–5, ECF No. 80. Having given Plaintiff at least two opportunities to report the companies' information, Commerce was not required to "issue a[n] [additional] supplemental questionnaire to the effect of, 'Are you sure?'" *ABB Inc.*, 355 F. Supp. 3d at 1222. The agency's multiple requests for the information complied with the notice requirements of Section 1677m(d).

As a final attack, Saha Thai argues that the missing information was not necessary because Commerce could have marked those six companies as affiliated in the sales database and calculated the margin without further information from Saha Thai. Pl.'s Reply at 16, ECF No. 53 ("Here, for those home-market customers that did not re-sell the subject merchandise, Commerce had all of the data needed to calculate an accurate antidumping margin, regardless of whether the home-market customer was considered affiliated or unaffiliated."). This is sophistry. Even accepting the premise that Commerce had all the data it needed to calculate an accurate antidumping margin, the agency lacked the data necessary to flag the companies as affiliates until Wheatland Tube provided the rest of the story. *See* IDM at 9, J.A. at 14,296, ECF No. 56. That Commerce could have calculated the margin if the companies in question are affiliated with Saha Thai does not answer the question of whether they actually *are* affiliated — an analysis that the agency is required to perform as part of its investigation. Moreover, the record lacks evidence of whether the companies in question resold the subject merchandise precisely

because Saha Thai never identified the companies to Commerce, preventing it from requesting additional information about their downstream sales in the Thai market. *See* IDM at 9–10, J.A. at 14,296–97, ECF No. 56. Saha Thai's contrary argument is meritless.

Saha Thai's failure to provide the requested information to Commerce justified the agency's drawing of an adverse inference from the facts otherwise available. When a party "has failed to cooperate by not acting to the best of its ability to comply with a request for information," the agency "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b)(1). To show that a party has failed to cooperate, Commerce:

> must make an objective showing that a reasonable and responsible importer would have known that the requested information was required to be kept and maintained under the applicable statutes, rules, and regulations" and "a subjective showing that the respondent under investigation['s] . . . failure to fully respond is the result of . . . either: (a) failing to keep and maintain all required records, or (b) failing to put forth its maximum efforts to investigate and obtain the requested information from its records.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382–83 (Fed. Cir. 2003).

Although "intentional conduct, such as deliberate concealment or inaccurate reporting, surely evinces a failure to cooperate, the statute does not contain an intent element." *Id.* at 1383. Saha Thai understood it had a duty to report potential affiliates. *See* Section A Resp. at 3, J.A. at 82,819, ECF No. 57 (Saha Thai explaining it is reporting "sales to *potentially affiliated* entities for consumption") (emphasis added). Despite having at least two distinct opportunities to report the six companies

to Commerce, it refrained from doing so. This led Commerce to conclude that Saha Thai "failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b)(1). Saha Thai's failure to identify companies in which its owners also held substantial equity interests justifies the application of an adverse inference. *See Nippon Steel*, 337 F.3d at 1382 (requiring respondents "to put forth [their] maximum efforts to investigate and obtain the requested information"). Commerce's affiliation determination regarding the six companies is therefore **SUSTAINED**.

## IV.    The Adverse Inference Regarding BNK

Although Commerce's application of adverse inferences to find affiliation regarding the first six companies was proper, its application of an adverse inference to find that the seventh company — BNK — was also an affiliate is problematic. Wheatland Tube's proffered information demonstrated only a single link between BNK and Saha Thai: a shared a human resources manager. Commerce argues that it "could not assume that this was the only tie between Saha Thai and BNK." Def.'s Resp. at 29, ECF No. 47. Saha Thai retorts that Wheatland Tube's submissions contained no evidence of overlapping shareholders or directors between Saha Thai and BNK and that "neither Commerce nor Defendant could point to evidence that established affiliation [with] BNK." Pl.'s Reply at 18, ECF No. 53. Because the sharing of a single human resources manager is insufficient for a reasonable mind to conclude that Saha Thai and BNK are affiliated, the Court cannot sustain Commerce's adverse inference on this point. *See Consol. Edison*, 305 U.S. at 229

(defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

The Court reviews Commerce's decisions and findings for substantial evidence. 19 U.S.C. § 1516a(b)(1)(B)(i). In the context of affiliation determinations, the agency must explain how the facts on the record fulfill the statutory requirements of 19 U.S.C. § 1677(33), which provides the definition of an affiliate. *See Hyundai Heavy Indus. Co. v. United States*, 393 F. Supp. 3d 1293, 1319 (CIT 2019) (holding that Commerce failed to explain how an adverse inference of affiliation met the statutory definition when all the agency cited was a single shared employee with a shared email address). Commerce's explanation of its affiliation finding concerning BNK consisted of a single paragraph, reproduced in full below:

> In addition, Saha Thai reported that [an employee] is its HR Manager; documents which BNK Steel Co., Ltd. (BNK) submitted to the Thai Labor Department show that that [same employee] is BNK's Human Resource Manager and that this individual can be contacted at a Saha Thai e-mail address . . . . Although Saha Thai dismisses this as not amounting to a traditional leadership position such as Chairman or Chief Executive Officer and *Wheatland Tube Company (Wheatland) has not proven that it entails a legal or operational position allowing for the exercise of control*, as discussed in the Issues and Decision Memorandum, we asked Saha Thai to "state whether Saha Thai's or any of Saha Thai affiliates' employees, stockholders, managers, directors, officers, or department heads has an equity or a debt position in any other company involved in the development, production, sale and/or distribution of the merchandise under review." Moreover, this information only came to light as a result of Wheatland's research of public records. Because Wheatland was limited to public records in its research, we cannot assume that there are no other ties between Saha Thai and [BNK] which Saha Thai

> failed to disclose. As a result, we cannot determine that
> Saha Thai is necessarily not affiliated with BNK.

Final Calculation Analysis at 2, J.A. at 99,505, ECF No. 58 (emphasis added).

This Court's previous decision in *Hyundai Heavy Industries* is instructive in evaluating Commerce's explanation. There, the Court held that Commerce's bare citation to a shared employee with a shared email was insufficient to uphold Commerce's finding of affiliation through the application of an adverse inference. 393 F. Supp. 3d at 1319. Commerce had found that the respondent had impeded its review by failing to disclose a shared sales agent with a customer and drew an adverse inference to find that the customer was affiliated with the respondent. *Id.* Commerce cited this lone fact to support its affiliation finding and failed to "explain how that 'fact' fulfilled the statutory definition of affiliation pursuant to section 1677(33)(D)." *Id.*

Here, too, the agency has offered no explanation of how a single shared human resources manager meets the statutory definition of affiliation. *See* Final Calculation Analysis at 2, J.A. at 99,505, ECF No. 58. Assumptions and speculations are not evidence. *OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1382 (Fed. Cir. 2019) (quoting *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999) and *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d. 1320, 1331 (Fed. Cir. 2017) ("The Supreme Court 'has stressed the importance of not simply rubber-stamping agency factfinding' . . . . 'Mere speculation' is not substantial evidence.")). Even if they were, Commerce misuses its "fact." The agency is required to find whether two entities are affiliated. *See* 19 U.S.C. § 1677(33) (listing seven ways to meet the affiliation test). Rather than

attempt to explain how one shared human resources employee meets the statutory test, Commerce instead declares it "cannot determine that Saha Thai is necessarily not affiliated with BNK." Final Calculation Analysis at 2, J.A. at 99,505, ECF No. 58. "Necessarily not affiliated" is not the statutory standard; it is instead Commerce's attempt to dodge the standard. Commerce's finding therefore not only fails to provide substantial evidentiary support, it also fails to apply the proper legal standard found in the statute. *Cf.* 19 U.S.C. § 1677(33). Commerce's prior findings regarding the six other companies are instructive. There, Commerce could point to shared ownership interests and shared directors as facts meeting the affiliation standard. *Compare id.* ("Members of a family," shared "officer[s] or director[s] of an organization," and anyone who has "power to vote[] 5 percent or more" of the stock of an organization are affiliated), *with* Final Analysis Memo at 2, J.A. at 99,505, ECF No. 58 ("Saha Thai reported that members of the Ratanasirivilai family own 16.68% of Saha Thai and members of the Karuchit family own 24.32% of Saha Thai . . . . The record shows that . . . Saha Thai home market customers are affiliated through majority stock ownership and board membership of the Ratanasirivilai family . . . [and] that members of the Karuchit family are shareholders of [certain home market customers.]"). No such analysis or information is present regarding BNK. *See* Final Calculation Analysis at 2, J.A. at 99,505, ECF No. 58 (quoted in full above). Because Commerce's finding is both factually unsupported and legally improper, it may not stand. The Court therefore **GRANTS** Plaintiff's Motion for Judgment on the Agency

Record on this issue and **REMANDS** to Commerce to perform a proper affiliation analysis regarding the relationship between Plaintiff and BNK.

**CONCLUSION**

This case must return to the agency for further consideration. Commerce's request to reconsider the scope of the administrative review following the forthcoming decision of the Federal Circuit in *Saha Thai Steel Pipe Public Co. Ltd. v. United States*, No. 22-2181 is **GRANTED**. On remand, Commerce must also reconsider its affiliation analysis regarding BNK, apply the proper statutory test for affiliation, and explain how the facts on the record support its determination. Commerce's affiliation analysis of the six other companies is **SUSTAINED** as having substantial evidentiary support and complying with all legal standards.

On consideration of all papers and proceedings held in relation to this matter, and on due deliberation, it is hereby:

**ORDERED** that Plaintiffs' Motion for Judgement on the Agency Record is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that Commerce, no later than 90 days from the issuance of the mandate in *Saha Thai Steel Pipe Public Co. Ltd. v. United States*, No. 22-2181 (Fed. Cir.), shall submit a Second Remand Redetermination in compliance with this Opinion and Order; and it is further

**ORDERED** that Defendant shall supplement the administrative record with all additional documents considered by Commerce in reaching its decision in the Remand Redetermination;

**ORDERED** that Plaintiff and Plaintiff-Intervenor shall have 30 days from the filing of the Remand Redetermination to submit comments to the Court;

**ORDERED** that Defendant shall have 30 days from the date of Plaintiffs' filing of comments to submit a response; and

**ORDERED** that Defendant-Intervenors shall have 15 days from the date of Defendant's filing of comments to submit their responses.

**SO ORDERED.**

_____
Stephen Alexander Vaden, Judge

Dated: _November 13, 2023_
New York, New York